RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 19a0002p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

LE'ARDRUS BURRIS,

*Defendant-Appellant*.

No. 16-3855

───────────────

Appeal from the United States District Court
for the Northern District of Ohio at Akron.
No. 5:15-cr-00245-6—James S. Gwin, District Judge.

Argued: October 6, 2017

Decided and Filed: January 3, 2019

Before: COLE, Chief Judge; MERRITT, BATCHELDER, MOORE, CLAY, GIBBONS,
ROGERS, SUTTON, COOK, GRIFFIN, KETHLEDGE, WHITE, STRANCH,
DONALD, THAPAR, BUSH, LARSEN, and NALBANDIAN, Circuit Judges.

───────────────

## COUNSEL

**ARGUED EN BANC:** Craig M. Sandberg, MUSLIN & SANDBERG, Chicago, Illinois, for
Appellant. Rebecca C. Lutzko, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio,
for Appellee. **ON SUPPLEMENTAL BRIEF:** Craig M. Sandberg, MUSLIN & SANDBERG,
Chicago, Illinois, for Appellant. Rebecca C. Lutzko, UNITED STATES ATTORNEY'S
OFFICE, Cleveland, Ohio, for Appellee.

BATCHELDER, J., announced the judgment of the court and delivered the majority
opinion with regard to *Anderson* and the principal opinion with regard to all other issues, in
which SUTTON, GRIFFIN, THAPAR, BUSH, and NALBANDIAN, JJ., joined. THAPAR, J.
(pp. 26–30), delivered a separate concurring opinion, in which BATCHELDER, GRIFFIN,
BUSH, and NALBANDIAN, JJ., joined. ROGERS, J. (pg. 31), delivered a separate opinion
concurring in part and in the judgment, in which GIBBONS, COOK, and LARSEN, JJ., joined.
KETHLEDGE, J. (pg. 32), delivered a separate opinion concurring only in the judgment. COLE,

C.J. (pp. 33–45), delivered a separate opinion concurring in the majority's holding in regards to *Anderson* and dissenting from the principal opinion, in which MERRITT, MOORE, CLAY, WHITE, STRANCH, and DONALD, JJ., joined.

————————————

**OPINION**

————————————

ALICE M. BATCHELDER, Circuit Judge. Federal law imposes longer prison sentences on certain violent career criminals. As relevant here, both the Armed Career Criminal Act ("ACCA") and the United States Sentencing Guidelines ("Guidelines") impose longer prison sentences on certain defendants who have a criminal record containing multiple previous violent felonies. *See* 18 U.S.C. § 924(e)(1), (e)(2)(B); USSG §§ 4B1.1, 4B1.2(a)(1). And both contain an identical so-called "elements clause" describing certain eligible violent-felony predicates: felonies that "ha[ve] as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i); USSG § 4B1.2(a)(1).

The question in this case is whether convictions of Ohio felonious assault and Ohio aggravated assault qualify as violent-felony predicates under the ACCA and Guidelines elements clauses. In 2012, a panel of this court held that both Ohio felonious assault and Ohio aggravated assault qualify as violent-felony predicates under the ACCA elements clause. *See United States v. Anderson*, 695 F.3d 390, 399–402 (6th Cir. 2012). That conclusion was disputed then, *see id.* at 406 (White, J., concurring), and has been disputed since, *see, e.g.*, *Williams v. United States*, 875 F.3d 803, 809 (6th Cir. 2017), *reh'g en banc granted, vacated by*, 882 F.3d 1169 (6th Cir. 2018) (Moore, J., concurring) ("we ought to reconsider *Anderson* en banc"); *id.* at 810 (Merritt, J., dissenting) ("the *Anderson* court did not follow the analytical procedure or reasoning process now established by the Supreme Court"). Still, subsequent panels of this court have considered themselves bound by *Anderson*. *See id.* at 805 (majority opinion). Among those was the panel in this case, which held that Ohio felonious assault qualifies as a violent-felony predicate under the Guidelines elements clause. *See United States v. Burris*, No. 16-3855, 2017 WL 6368852, at *2 (6th Cir. Dec. 13, 2017), *reh'g en banc granted, vacated by*, Order (6th Cir. Feb. 26, 2018) (No. 16-3855); *accord United States v. Hibbit*, 514 F. App'x 594, 597 (6th Cir. 2013).

We granted en banc review to examine whether *Anderson* still binds this court. We first conclude that Ohio felonious assault and Ohio aggravated assault are too broad to always (or categorically) qualify as violent-felony predicates—they each criminalize more conduct than is described in the ACCA and Guidelines elements clauses. We next conclude that both Ohio's felonious-assault and aggravated-assault statutes are divisible—they each set out two separate crimes, one of which qualifies as a violent-felony predicate under the ACCA and the Guidelines and the other which does not. Because the *Anderson* court did not conduct an overbreadth analysis, and because subsequent Supreme Court precedent requires a divisibility analysis that *Anderson* lacks, we conclude that *Anderson* no longer binds this court. Still, based on the facts in this case and the applicable standard of review, we conclude that Burris is not eligible for relief. We AFFIRM the judgment of the district court.

I.

Le'Ardrus Burris was charged with one count of conspiracy to possess with the intent to distribute heroin, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), (b)(1)(B) and (b)(1)(C), 846; one count of possession with intent to distribute heroin, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C); and two counts of using a communication facility to facilitate a drug trafficking offense, in violation of 21 U.S.C. § 843(b) and (d)(1). A jury found Burris guilty on all counts.

Burris had a criminal record containing two previous Ohio felony convictions: a 2005 conviction for complicity in trafficking in drugs, in violation of Ohio Revised Code §§ 2923.02, 2925.03; and a 2007 conviction for felonious assault, in violation of Ohio Revised Code § 2903.11(A)(2). *See Burris*, 2017 WL 6368852, at *1, 2. The district court relied on these felonies to sentence Burris as a career offender under the Guidelines. *Id.* at *1; *see* USSG §§ 4B1.1, 4B1.2(a)(1). Burris objected to the career-offender classification, arguing that it overstated his actual criminal history, but Burris did not argue that his Ohio felonies were not violent-felony predicates under the Guidelines. *See Burris*, 2017 WL 6368852, at *1. The district court ultimately granted Burris a significant downward variance from the applicable 210-to-262-month Guidelines range, sentencing him to 90 months' imprisonment. *See id.*

On appeal, Burris argued that neither of his Ohio felonies qualified as violent-felony predicates under the Guidelines. *See id.* at \*1–2. The panel rejected both arguments. *See id.* In rejecting Burris's argument regarding his Ohio felonious-assault conviction, the panel relied on *Anderson* and another recent Sixth Circuit case, *Williams*, 875 F.3d at 805–06. *See Burris*, 2017 WL 6368852, at \*2 ("*Anderson* and *Williams* are binding precedent that resolve this issue."). We subsequently granted en banc review in *Williams* and in this case.

## II.

This area of federal sentencing law is complicated. Members of the Supreme Court have described aspects of it as a "time-consuming legal tangle," *Mathis v. United States*, 136 S. Ct. 2243, 2264 (2016) (Breyer, J., dissenting), and as a "mess," *id.* at 2269 (Alito, J., dissenting). Before turning to the merits of Burris's arguments, therefore, we begin by describing (1) the operation of the ACCA and the Guidelines, (2) Ohio's felonious assault and aggravated assault statutes, and (3) our cases interpreting those statutes in the ACCA and Guidelines context.

## A.

The ACCA imposes a fifteen-year mandatory-minimum prison sentence on persons who violate 18 U.S.C. § 922(g), the federal felon-in-possession-of-a-firearm statute, and who have three previous state or federal convictions for "violent felon[ies] or serious drug offense[s]." *See* 18 U.S.C. § 924(e)(1). A "violent felony" is a felony that, as relevant here, "has as an element the use, attempted use, or threatened use of physical force[1] against the person of another." *Id.* § 924(e)(2)(B)(i). This clause is commonly called the ACCA "elements clause." *See, e.g.*, *United States v. Patterson*, 853 F.3d 298, 302 (6th Cir. 2017). Similarly, the Guidelines advise enhanced sentences for "career offenders," adults who commit a "felony that is either a crime of violence or a controlled substance offense" and who have "at least two prior felony convictions of either a crime or violence or a controlled substance." *See* USSG § 4B1.1(a). A "crime of violence" is a felony that, as relevant here, "has as an element the use, attempted use, or threatened use of physical force against the person of another." *Id.* § 4B1.2(a)(1). This clause is

---

[1]"[P]hysical force," as used here, means "*violent* force—that is, force capable of causing physical pain or injury to another person." *Johnson v. United States*, 559 U.S. 133, 140 (2010) ("*Johnson I*").

commonly called the Guidelines "elements clause." *See, e.g.*, *United States v. Harris*, 853 F.3d 318, 320 (6th Cir. 2017). Because the text of the ACCA and Guidelines elements clauses are identical, we typically interpret both elements clauses "the same way." *See id.*

Since 1990, the Supreme Court has instructed federal sentencing courts to use the "categorical approach" to determine whether a defendant's previous state or federal felony convictions "ha[ve] as an element the use, attempted use, or threatened use of physical force against the person of another." *See Descamps v. United States*, 570 U.S. 254, 260–61 (2013) (citing *Taylor v. United States*, 495 U.S. 575, 600 (1990)) ("*Taylor* adopted a 'formal categorical approach'" in the ACCA context); *see also United States v. Ford*, 560 F.3d 420, 421-22 (6th Cir. 2009) (citing *Taylor*, 495 U.S. at 602) ("we apply a 'categorical' approach" in the Guidelines context). The categorical approach prohibits federal sentencing courts from looking at the particular facts of the defendant's previous state or federal felony convictions; rather, federal sentencing courts "may 'look only to the statutory definitions'—*i.e.*, the elements—of a defendant's prior offenses." *Descamps*, 570 U.S. at 261 (quoting *Taylor*, 495 U.S. at 600). The question for the sentencing court in the elements-clause context is whether every defendant convicted of that state or federal felony *must have* used, attempted to use, or threatened to use physical force against the person of another *in order to have been convicted*, not whether the particular defendant *actually* used, attempted to use, or threatened to use physical force against the person of another *in that particular case*. *See generally Mathis*, 136 S. Ct. at 2249; *see Harris*, 853 F.3d at 320. If the answer to that question is "no," and the statute forming the basis for the defendant's previous state or federal felony conviction criminalizes conduct that does not involve "the use, attempted use, or threatened use of physical force against the person of another," then a conviction under that statute may not serve as a violent-felony predicate under the elements clause, assuming that statute is an "'indivisible' statute—*i.e.*, one not containing alternative elements." *See Descamps*, 570 U.S. at 258. Importantly, this has been true since at least 1990. *See Taylor*, 495 U.S. at 600–02.

Some state and federal criminal statutes, however, are "divisible" statutes—*i.e.*, ones which "set[] out one or more elements of the offense in the alternative," "thereby defin[ing] multiple crimes." *Descamps*, 570 U.S. at 257; *Mathis*, 136 S. Ct. at 2249. Legislatures

sometimes enact divisible statutes "to create two different offenses, one more serious than the other." *Mathis*, 136 S. Ct. at 2249. If at least one of the statute's alternative sets of elements categorically matches the ACCA or Guidelines elements clauses and at least one of the sets of elements does not, the "modified categorical approach" allows sentencing courts "to consult a limited class of documents . . . to determine which alternative formed the basis of the defendant's prior conviction." *Descamps*, 570 U.S. at 257. This limited class of documents—so-called "*Shepard* documents"—includes "the indictment, jury instructions, or plea agreement and colloquy." *Mathis*, 136 S. Ct. at 2249. Once the federal sentencing court has determined under which alternative set of elements the defendant was convicted, it may then "do what the categorical approach demands: compare the elements of the crime of conviction (including the alternative element used in the case)" with the ACCA or Guidelines elements clause. *Descamps*, 570 U.S. at 257; *Mathis*, 136 S. Ct. at 2249. But the modified categorical approach applies only to statutes that list multiple alternative sets of *elements*, not statutes that list multiple alternative factual *means* of committing a single element. *See Mathis*, 136 S. Ct. at 2249.

When faced with a state or federal statute in the elements-clause context, therefore, we must conduct two analyses. One is an overbreadth analysis to determine whether the statute in question is too broad to categorically qualify as a violent-felony predicate because it criminalizes more conduct than is described in the ACCA and Guidelines elements clauses. The other is a divisibility analysis to determine whether the statute in question is divisible because it sets out multiple separate crimes and if so, whether any of those separate crimes qualifies as a violent-felony predicate under the ACCA and Guidelines elements clauses.

## B.

The relevant portions[2] of Ohio's felonious-assault and aggravated-assault statutes create nearly identical crimes, except that Ohio aggravated assault includes a mitigating element of provocation. *See State v. Deem*, 533 N.E.2d 294, 299 (Ohio 1988). Ohio felonious assault is a second-degree felony unless the victim is a law-enforcement officer, in which case it is a first-

---

[2]Ohio's felonious-assault statute also criminalizes certain kinds of sexual conduct by persons with AIDS, *see* Ohio Rev. Code § 2903.11(B), but this portion of the statute is not at issue in this case. Each reference to convictions under Ohio's felonious-assault statute in this opinion refers only to subsection (A) convictions.

degree felony; Ohio aggravated assault is a fourth-degree felony. *See* Ohio Rev. Code §§ 2903.11(D)(1)(a), 2903.12(B).

The relevant portion of Ohio's felonious-assault statute is as follows:

**Ohio Revised Code § 2903.11 – Felonious Assault**

(A) No person shall knowingly do either of the following:

(1) Cause serious physical harm to another or to another's unborn;

(2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance.

. . .

(E) As used in this section:

(1) "Deadly weapon" and "dangerous ordnance" have the same meanings as in section 2923.11 of the Revised Code.

The relevant portion of Ohio's aggravated-assault statute is as follows:

**Ohio Revised Code § 2903.12 – Aggravated Assault**

(A) No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly:

(1) Cause serious physical harm to another or to another's unborn;

(2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance, as defined in section 2923.11 of the Revised Code.

Importantly, the Ohio Revised Code also contains statutory definitions for "physical harm" and "serious physical harm," as used in Ohio's felonious-assault and aggravated-assault statutes. These definitions are not cross-referenced from either of those statutes, though, and that has caused difficulty in some of our prior cases, including the *Anderson* case. These definitions are as follows:

**Ohio Revised Code § 2901.01 – Definitions**

(A) As used in the Revised Code:

. . .

(3) "Physical harm to persons" means any injury, illness, or other physiological impairment, regardless of its gravity or duration.

. . .

(5) "Serious physical harm to persons" means any of the following:

(a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;

(b) Any physical harm that carries a substantial risk of death;

(c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;

(d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;

(e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.

In 2012, a divided panel of this court held that both Ohio felonious assault and Ohio aggravated assault qualify as violent-felony predicates under the ACCA elements clause. *See Anderson*, 695 F.3d at 399–402. The panel correctly noted that it was required to apply the categorical approach to determine whether convictions under Ohio's felonious-assault and aggravated-assault statutes qualified as violent felonies. *See id.* at 399. The panel also noted that "[i]f it is possible to violate the statute in a way that would constitute a violent felony and in a way that would not, a 'court may consider the indictment, guilty plea, or similar documents to determine whether they necessarily establish the nature of the prior conviction.'" *Id.* (quoting *United States v. Gibbs*, 626 F.3d 344, 352 (6th Cir. 2010)); *see Shepard v. United States*, 544 U.S. 13, 26 (2005). The panel then analyzed Ohio's aggravated-assault statute, and found that it qualified as a violent-felony predicate under the ACCA elements clause because:

> We think it clear that the Ohio aggravated assault statute, which requires proof of "serious physical harm" or "physical harm . . . by means of a deadly weapon or dangerous ordnance," Ohio Rev. Code § 2903.12(A)(1)-(2), necessarily requires proof that the defendant used "force capable of causing physical pain or injury." [quoting *Johnson v. United States*, 559 U.S. 133, 140 (2010) ("*Johnson I*").] We hold that one can "knowingly . . . [c]ause serious physical harm to another," Ohio Rev. Code § 2903.12(A)(1), only by knowingly using force capable of causing physical pain or injury, *i.e.*, violent physical force, in the context of determining what crime constitutes a "violent felony" under § 924(e)(2)(B)(i). . . . In sum, because the Ohio aggravated assault statue requires the state to show the defendant either knowingly caused serious physical harm to another or knowingly caused physical harm to another by means of a deadly weapon or ordnance, a conviction under that statute is a "violent felony" under § 924(e)(2)(B)(i).

*Anderson*, 695 F.3d at 400–01 (footnote omitted). The panel then went on to analyze Ohio's felonious-assault statute, concluding that convictions under subsection (A) of that statute also

qualified as violent felonies under the ACCA elements clause, for all of the same reasons. *See id.* at 402. Judge White did not join that portion of the opinion, and wrote separately to explain that she did not agree that convictions under Ohio's felonious-assault and aggravated-assault statutes qualified as violent felonies under the ACCA elements clause; rather, she thought that they qualified only under the ACCA residual clause.[3] *See id.* at 403-06 (White, J., concurring).

As we earlier noted, subsequent panels of this court have regularly applied *Anderson*'s holding in the Guidelines context, finding that convictions under Ohio's felonious-assault and aggravated-assault statutes qualified as crimes of violence under the Guidelines as well. *See, e.g.*, *Hibbit*, 514 F. App'x at 597; *Burris*, 2017 WL 6368852, at *2. And despite dissatisfaction with *Anderson*'s holding in 2012, and growing dissatisfaction since then as the Supreme Court clearly laid out the operation of the categorical approach in cases such as *Descamps* and *Mathis*, *see, e.g.*, *Williams*, 875 F.3d at 809 (Moore, J., concurring); *id.* at 810 (Merritt, J., dissenting), panels have continued to consider themselves bound by *Anderson*, *see id.* at 805 (majority opinion).

III.

Burris argued that *Anderson* is wrong and should be overruled, for two reasons. He first pointed out that even if Ohio's felonious assault and aggravated assault statutes might appear on their faces to categorically require some form of physical harm, the Ohio Revised Code in fact defines "serious physical harm" to include some forms of serious mental harm. *See* Ohio Rev. Code § 2901.01(A)(5)(a). In failing to discuss this statutory definition, the *Anderson* panel "failed to recognize that the statute is overbroad." Burris also pointed out that the Supreme Court issued *Descamps* and *Mathis* after the *Anderson* decision, and those two Supreme Court cases "clarified how to apply the categorical approach when determining whether a statute is divisible and how to apply the modified categorical approach if a statute is divisible." "Without the benefit of *Descamps* and *Mathis*," Burris argued, "the *Anderson* panel did not properly analyze Ohio's felonious assault statute."

---

[3]The Supreme Court has since found the ACCA residual clause to be unconstitutionally vague. *See Johnson v. United States*, 135 S. Ct. 2551, 2563 (2015) ("*Johnson II*").

To obtain relief, Burris faces some obstacles. As the government pointed out in its supplemental briefing,[4] Burris failed to argue to the district court that his Ohio felonies were not violent-felony predicates under the Guidelines. *See Burris*, 2017 WL 6368852, at \*1. We may therefore grant Burris relief only if he satisfies the plain-error standard. *See United States v. Olano*, 507 U.S. 725, 732 (1993). This requires, in part, that Burris show that any error in his case "affects [his] substantial rights." *See id.*; Fed. R. Crim. Proc. 52(b). But as the government has shown,[5] the *Shepard* documents in this case indicate that Burris was convicted of the (A)(2) variant of Ohio felonious assault, and not the potentially problematic (A)(1) variant. Any error in treating Burris's Ohio felonious-assault conviction could affect Burris's substantial rights only if (1) at least some part of the Ohio felonious-assault statute is too broad to categorically qualify as a crime of violence under any then-valid Guidelines career-offender clause (the enumerated-offense clause, the residual clause, or the elements clause) because it criminalizes knowingly causing certain forms of serious mental harms; and (2) the Ohio felonious-assault statute is indivisible and sets forth two factual *means* of committing Ohio felonious assault rather than two alternative sets of *elements*. Even if both of these are true, and Burris is able to thereby show that there is an error in his case which affects his substantial rights, Burris must also demonstrate that the error is "plain" and that the plain error "seriously affects the fairness, integrity or public reputation of judicial proceedings." *Olano*, 507 U.S. at 732 (citation omitted); Fed. R. Crim. Proc. 52(b). He cannot do so. We explain why below.

---

[4]We note that the government failed to point out the appropriate standard of review in this case in its response to Burris's request for rehearing en banc. It would be helpful if the government pointed out vehicle problems such as these when it asks the en banc court to deny a request for rehearing en banc.

[5]The government filed a motion asking us to take judicial notice of the *Shepard* documents in this case. The government argues that it had no reason to produce these documents earlier in the case, since *Anderson* and its progeny made clear that both (A)(1) and (A)(2) of Ohio's felonious-assault and aggravated-assault statutes satisfied the Guidelines elements clause. Now that *Anderson*'s holding is in jeopardy, the government argues that the *Shepard* documents are necessary to resolve this case. We may take judicial notice "at any stage of the proceeding" of "fact[s] that [are] not subject to reasonable dispute because [they] . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(d), (b)(2). We have taken judicial notice of *Shepard* documents in similar circumstances before. *See United States v. Adkins*, 729 F.3d 559, 567 n.4 (6th Cir. 2013); *United States v. Ferguson*, 681 F.3d 826, 834–35 (6th Cir. 2012). For the reasons stated in those opinions, we GRANT the government's motion to take judicial notice.

A.

We begin by determining whether at least some part of Ohio's felonious-assault and aggravated-assault statutes is too broad to categorically qualify as a crime of violence under any Guidelines career-offender clause that was in place at the time that the district court sentenced Burris.[6] In addition to the Guidelines elements clause, there are two other Guidelines career-offender clauses under which an Ohio felonious-assault conviction might qualify as a crime of violence: the enumerated-offense clause (which includes "aggravated assault")[7] and the residual clause (felonies that "otherwise involve[] conduct that presents a serious potential risk of physical injury to another"). *See* USSG § 4B1.2 Application Note 1, (a)(2) (2015).

Each of these three Guidelines clauses focuses on "crime[s] of violence"—crimes resulting in "physical" harms. The elements clause sweeps in felonies that "ha[ve] as an element the use, attempted use, or threatened use of *physical* force against the person of another." USSG § 4B1.2(a)(1) (2015). The enumerated offense of aggravated assault, under our precedent, is met when a person:

> (a) attempts to cause *serious bodily injury*[8] to another, or causes such injury purposely, knowingly, or recklessly under circumstances manifesting extreme indifference to the value of human life; or (b) attempts to cause or purposely or knowingly causes *bodily injury*[9] to another with a deadly weapon.

---

[6]We express no opinion as to the order in which these two issues should be addressed in other cases, noting only that in this case, addressing overbreadth first is the more useful approach.

[7]"[A]ggravated assault" is now listed in the main text of the Guidelines enumerated-offense clause. *See* USSG § 4B1.2(a)(2). In the version of the Guidelines under which Burris was sentenced, however, "aggravated assault" was listed only in Application Note 1. *See United States v. Rodriguez*, 664 F.3d 1032, 1036 (6th Cir. 2011); USSG § 4B1.2 Application Note 1 (2015), available at https://www.ussc.gov/guidelines/2015-guidelines-manual/2015-chapter-4. Still, courts followed the application notes, and *Rodriguez* held that Ohio aggravated assault qualified as an enumerated crime of violence for purposes of the career-offender guidelines. *See id.* at 1036–37.

[8]Serious bodily injury means "bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of any bodily member or organ." Model Penal Code § 210.0(3).

[9]Bodily injury means "physical pain, illness or any impairment of physical condition." Model Penal Code § 210.0(2)

*United States v. McFalls*, 592 F.3d 707, 717 (6th Cir. 2010) (quoting Model Penal Code § 211.1(2)), *abrogated on other ground by United States v. Verwiebe*, 874 F.3d 258, 262 (6th Cir. 2017). And the residual clause swept[10] in felonies that "otherwise involve[] conduct that presents a serious potential risk of *physical injury* to another." USSG § 4B1.2(a)(2) (2015).

Both Ohio's felonious-assault and aggravated-assault statutes criminalize, among other things, "knowingly . . . [c]aus[ing] serious physical harm to another . . . ." *See* Ohio Rev. Code §§ 2903.11(A)(1), 2903.12(A)(1). But "[s]erious physical harm" includes "[a]ny mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment." *Id.* § 2901.01(A)(5)(a). On their faces, then, both statutes appear to criminalize more conduct than is described in each of the Guidelines clauses—a person can at least theoretically knowingly cause certain serious mental harms without using, attempting to use, or threatening to use physical force against the person of another, *see* 18 U.S.C. § 924(e)(2)(B)(i); USSG § 4B1.2(a)(1), or without causing bodily injury or without engaging in conduct that presents a serious potential risk of physical injury to another, *see McFalls*, 592 F.3d at 717; USSG § 4B1.2(a)(2) (2015). The Supreme Court has cautioned us, however, not to "apply legal imagination to the state offense; there must be a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside" the conduct described in the elements clauses. *See Moncrieffe v. Holder*, 569 U.S. 184, 191 (2013) (internal quotation marks and citation omitted); *United States v. Southers*, 866 F.3d 364, 368 (6th Cir. 2017) ("*Moncrieffe* and its 'realistic probability' inquiry applies in the ACCA context."). We therefore look to state law to determine whether there is a realistic probability that Ohio would apply its felonious-assault and aggravated-assault statutes to conduct that falls outside of the conduct described in the Guidelines career-offender clauses. In doing so, we are bound by the Ohio Supreme Court's interpretation of its criminal law. *See Southers*, 866 F.3d at 368. "[A]fter a state supreme court's decisions, 'intermediate state appellate court decisions constitute the next best indicia of

---

[10]Although the Supreme Court struck down the identically worded ACCA residual clause as unconstitutionally void in *Johnson II*, 135 S. Ct. at 2563, it upheld the Guidelines residual clause against a void-for-vagueness challenge, *see Beckles v. United States*, 137 S. Ct. 886, 890 (2017). The United States Sentencing Commission removed the residual clause from the Guidelines after *Johnson II*, but we "consider § 4B1.2(a) 'as it existed at the time of [Burris's] sentencing, giving effect to the residual clause." *United States v. Jackson*, 704 F. App'x 484, 487 (6th Cir. 2017) (quoting *United States v. Tibbs*, 684 F. App'x 456, 459-60 (6th Cir. 2017)); *accord Patterson*, 853 F.3d at 305–06.

what state law is.'" *Id.* (quoting *United States v. Gardner*, 823 F.3d 793, 803 (4th Cir. 2016) (alteration omitted)).

The Ohio Supreme Court has described the *purpose* of both versions of Ohio aggravated assault. They "serve the same purpose—preventing physical harm to persons." *State v. Brown*, 895 N.E.2d 149, 150–51 (Ohio 2008). But we are aware of no Ohio Supreme Court cases that purport to limit Ohio's statutory definition of "serious physical harm" to only physical harms. We therefore turn to Ohio's intermediate appellate court decisions to determine whether there is a realistic probability that Ohio would apply its felonious-assault and aggravated-assault statutes to conduct that falls outside of the conduct described in the Guidelines career-offender clauses.

These decisions confirm that there is such a realistic probability. Burris cites two cases that confirm this, and the government cites an additional case. The first, *State v. Elliot*, involved a man who was convicted of Ohio felonious assault after he killed his wife and then allowed his six-year-old son to discover her lying dead in a pool of her own blood. 663 N.E.2d 412, 413 (Ohio Ct. App. 1995). The son suffered post-traumatic stress disorder ("PTSD") as a result. *Id.* at 415–16. In *Elliot*, the Ohio intermediate appellate court found that liability for violating Ohio's felonious-assault statute extends to a defendant's "failure to act" to prevent serious physical harm to a victim when the defendant has a legal duty to do so. *Id.* at 415. As relevant in *Elliot*, "parents and guardians have a legal duty to protect their children from harm," and the father did not act to prevent his son's discovery of the son's dead mother. *Id.*

The second, *State v. Cooper*, involved a mother who was involved in sexually abusing and/or allowing others to sexually abuse her four children. 743 N.E.2d 427, 431 (Ohio Ct. App. 2000). Although the details of the mother's involvement are not clear for each of the four children, we know that the mother held down one of her daughters to allow her boyfriend to rape the daughter, digitally raped that daughter herself by placing her fingers in her daughter's vagina, and placed her hand on the penis of one of her sons. *Id.* The children each displayed "a variety of symptoms of mental illness." *Id.* The mother was charged with committing felonious assault against each of her four children "by means of many acts and omissions, including her assistance in the rapes and sexual abuse and her failure to protect each child from physical and sexual abuse over his or her lifetime." *Id.* at 431–32. In *Cooper*, the Ohio intermediate appellate court found

that liability for violating Ohio's felonious-assault statute extends to a defendant's series of acts and failures to act which, taken together, cause serious physical harm to the victims (rather than a single act or failure to act, as in *Elliot*). *See id.* at 433–35.

The third, *State v. Hodges*, involved an Episcopal priest who counseled a parishioner, who had a history of psychiatric illnesses, about her sexually abusive husband. 669 N.E.2d 256, 258 (Ohio Ct. App. 1995). The priest began hugging and kissing her during counseling sessions, then groped her, and eventually engaged in oral sex and sexual intercourse with her, despite her telling him, "No, this is wrong." *Id.* at 258–59, 261. There is no indication in *Hodges* that the priest used any physical force in any these encounters. The parishioner, however, later carved "repent" into her arm with a razor blade, "apparently in response to her sexual encounter with defendant," and was hospitalized in a psychiatric unit. *Id.* at 259, 261. In *Hodges*, the Ohio intermediate appellate court rejected the priest's argument that he was entitled to a judgment of acquittal on his felonious-assault charge, holding that reasonable minds could conclude that the priest knowingly caused serious physical harm to the parishioner. *Id.* at 261.

These cases confirm that there is at least a "realistic probability" that a person may be convicted of Ohio felonious assault or Ohio aggravated assault[11] after knowingly causing "serious physical harm" in the form of certain serious mental harms without using physical force, as defined in the ACCA and the Guidelines. "[P]hysical force," as used here, means "*violent* force—that is, force capable of causing physical pain or injury to another person." *Johnson I*, 559 U.S. at 140. The father in *Elliot* did not have any physical contact with his son, but was convicted of feloniously assaulting him. *See Elliot*, 663 N.E.2d at 413. There is no indication that the mother in *Cooper* had physical contact with two of the four children she was convicted of feloniously assaulting; and there is no allegation that the physical contact she had with her other two children constituted "physical force" as *Johnson I* describes it. *See Cooper*, 743 N.E.2d at 431. Similarly, there is no indication that any of the physical contact the priest in *Hodges* had with his parishioner constituted "physical force." *See Hodges*, 669 N.E.2d at 258–59. The fairest reading of these cases is that defendants in Ohio may be convicted of felonious

---

[11]Although each of these was a felonious assault case, because the relevant elements are the same in both statutes, we assume the Ohio courts would interpret them in the same way.

assault or aggravated assault without any "physical force" whatsoever (or threat of such force, or the attempted use of such force), so long as those defendants knowingly cause (by whatever means) the serious mental harms included in Ohio's statutory definition of "serious physical harm."  Ohio's felonious-assault and aggravated-assault statutes are therefore too broad to categorically qualify as violent-felony predicates under the ACCA and Guidelines elements clauses.

Defendants in Ohio may also be convicted of felonious assault or aggravated assault without, as is required by the Guidelines enumerated-offense clause,[12] causing any form of "bodily injury"—"physical pain, illness or any impairment of physical condition"—much less "serious bodily injury."  *See* Model Penal Code § 210.0[13]; *McFalls*, 592 F.3d at 717.  In *Elliot* and *Cooper*, at least,[14] there is no indication that the victims suffered bodily injury as defined in the Model Penal Code, and it is clear in both that the jury punished the defendants for mental harms suffered by the victims, not bodily ones.  *See Elliot*, 663 N.E.2d at 413, 415; *Cooper*, 743 N.E.2d at 431, 433–35.  Ohio's felonious-assault and aggravated-assault are therefore too broad to categorically qualify as violent-felony predicates under the Guidelines enumerated-offense clause.[15]

---

[12]The ACCA enumerated-offense clause does not contain "aggravated assault."  *See* 18 U.S.C. § 924(e)(2)(B)(ii).

[13]The Model Penal Code defines "bodily injury" as "physical pain, illness or any impairment of physical condition," and "serious bodily injury" as "bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." Model Penal Code § 210.0.

[14]The defendant in *Hodges* was at least a but-for cause of "bodily injury," whether or not his conduct met the rest of elements of the generic aggravated-assault offense.  *See Hodges*, 669 N.E.2d at 259, 261 ("based on a reasonable degree of medical certainty, the sexual intercourse with the defendant caused serious physical harm" to the victim, including her carving of "repent" into her arm).

[15]The *Rodriguez* panel held that Ohio's aggravated-assault statute "qualifies as a 'crime of violence'" under the enumerated-offense clause.  *See* 664 F.3d at 1039, 1038–39 ("We need not consider whether the crime has as an element the use, attempted use, or threatened use of force, . . . or whether the crime fits within the residual clause because it 'otherwise involves conduct that presents a serious potential risk of physical injury to another." (citations omitted)).  The *Rodriguez* panel provided extensive analysis to support this conclusion, *see id.* at 1035–39, but simply accepted the defendant's concession that Ohio's aggravated-assault statute "does require violence." *See id.* at 1039.  But a defendant cannot establish the meaning of state law through concession, and, like the *Anderson* panel, the *Rodriguez* panel did not refer to or analyze Ohio's statutory definition of "serious bodily harm," nor did it perform the divisibility analysis now required by *Descamps and Mathis.*

Defendants in Ohio may also be convicted of felonious assault or aggravated assault without, as is required by the Guidelines residual clause, engaging in conduct that presents a serious potential risk of physical injury to another. *See* USSG § 4B1.2(a)(2) (2015). In *Elliot* and *Cooper*, at least, the defendants engaged in conduct that Ohio juries thought could fairly be described as presenting a serious potential risk of mental injury to another, but we do not think that that conduct could fairly be described as presenting a serious potential risk of *physical* injury to another, and it is clear in both that the jury punished the defendants for engaging in conduct that presented a serious risk of mental injury, not physical injury. *See Elliot*, 663 N.E.2d at 413, 415; *Cooper*, 743 N.E.2d at 431, 433–35. Ohio's felonious-assault and aggravated-assault are therefore too broad to categorically qualify as violent-felony predicates under the Guidelines residual clause.[16]

The government argues that we should not allow "a few (potentially) outlier lower court decisions" to "excuse thousands of violent career criminals" from the consequences imposed by the ACCA and the Guidelines. In support of this position, the government quotes *Perez v. United States*, 885 F.3d 984, 990 (6th Cir. 2018), in which a panel of this court accepted a similar argument and found that New York's second-degree robbery qualified as a violent felony under the ACCA elements clause despite several New York intermediate appellate court cases in which defendants were convicted without using "force capable of causing physical pain or injury to another person." *Id.* at 989–90 (quoting *Johnson I*, 559 U.S. at 140)). But in *Perez*, the panel interpreted a more-recent decision by New York's highest court to require at least "a threshold level of force," *see id.* at 988 (citing *People v. Jurgins*, 46 N.E.3d 1048, 1053 (N.Y. 2015)), and found that "[t]he New York courts by and large have construed the statute to . . . include force that would cause pain to another," *id.* Here, by contrast, there is no such opinion from Ohio's highest court that appears to limit Ohio's statutory definition of "serious physical harm" in such

---

[16]Judge White thought in *Anderson*, and another panel held shortly thereafter, that Ohio's felonious-assault and aggravated-assault statutes categorically qualified as violent-felony predicates under the identically worded ACCA residual clause. *See Anderson*, 695 F.3d at 403–06 (White, J., concurring); *United States v. Perry*, 703 F.3d 906, 910 (6th Cir. 2013). Yet again, neither Judge White nor the *Perry* panel looked at or analyzed Ohio's statutory definition of "serious physical harm" rather than the ordinary meaning of "serious physical harm." Because the panel in *Perry* failed to do so, its conclusion that Ohio's felonious-assault and aggravated-assault statutes categorically qualified as violent-felony predicates under language of the ACCA residual clause is no longer good law and should not be applied to the Guidelines context.

a way that convictions of Ohio felonious assault and Ohio aggravated assault may categorically qualify as violent-felony predicates under the ACCA and Guidelines elements clauses. We therefore reject the government's broad interpretation of *Perez* as inconsistent with the Supreme Court's categorical-approach jurisprudence. Some might think that Congress intended to impose enhanced prison sentences under the ACCA and the Guidelines on the basis of state or federal felony convictions that almost always, but do not quite always, involve the use, attempted use, or threatened use of physical force against the person of another. *See generally Mathis*, 136 S. Ct. at 2268 (Alito, J., dissenting) (lamenting that the Supreme Court's categorical-approach jurisprudence would result in "all burglary convictions in a great many States" being disqualified as ACCA-predicates even though "Congress indisputably wanted burglary to count under ACCA"). But we are a lower court, and we must follow the Supreme Court's categorical-approach jurisprudence here. That jurisprudence requires Burris only to point to "cases in which the state courts in fact did apply the statute" to conduct falling outside the conduct described in the ACCA and Guidelines elements clauses, and that is enough to establish a "realistic probability" that Ohio would apply its felonious-assault and aggravated-assault statutes to conduct that does not involve the use, attempted use, or threatened use of physical force against the person of another. *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007); *see Moncrieffe*, 569 U.S. at 191 (quoting *Duenas-Alvarez*, 549 U.S. at 193); *Southers*, 866 F.3d at 368 ("*Moncrieffe* and its 'realistic probability' inquiry applies in the ACCA context."). Burris has pointed to those cases,[17] so Burris has established that Ohio's felonious-assault and aggravated-assault statutes are not a *categorical* match to the ACCA and Guidelines elements clauses. Unless those statutes are divisible, therefore, convictions under those statutes do not qualify as violent-felony predicates under the ACCA and Guidelines elements clauses. *See Descamps*, 570 U.S. at 258.

*Anderson* wrongly held that convictions under Ohio's felonious-assault and aggravated-assault statutes categorically qualify as violent-felony predicates. *See Anderson*, 695 F.3d at

---

[17]True, these are Ohio intermediate appellate court decisions and not decisions from the Ohio Supreme Court. But "*Moncrieffe* only looked to state intermediate appellate decisions," *Southers*, 866 F.3d at 368, and those were sufficient to allow the Supreme Court to determine what state law was. *Elliot*, *Cooper*, and *Hodges* are therefore sufficient to allow us to determine what Ohio law is.

399–402.  The *Anderson* panel apparently did so because it analyzed only the ordinary meaning of "serious physical harm" rather than Ohio's statutory definition for "serious physical harm."  But because that statutory definition includes certain serious mental harms, and because state courts in fact do apply the statute to conduct that does not involve the use, attempted use, or threatened use of physical force against the person of another—and did at the time *Anderson* was decided; *Elliot*, *Cooper*, and *Hodges* were all decided before *Anderson*—Burris is correct that *Anderson* was wrongly decided and should be overruled on that basis.

B.

We next determine whether Ohio's felonious-assault and aggravated-assault statutes are divisible because they set out multiple separate crimes and if so, whether either of those separate crimes qualifies as a violent-felony predicate under the ACCA and Guidelines elements clauses.

Supreme Court cases decided after *Anderson* make clear that, if a statute is too broad to qualify categorically as a violent-felony predicate under the ACCA and Guidelines elements clauses, we should next look at whether that statute is "divisible."  "[D]ivisible" statutes, as a reminder, are statutes which "set[] out one or more elements of the offense in the alternative," "thereby defin[ing] multiple crimes."  *Descamps*, 570 U.S. at 257; *Mathis*, 136 S. Ct. at 2249.

The Supreme Court in *Mathis* described several ways to determine whether a state statute is divisible, each of which is based in state law.  There may be "a state court decision" that "definitively answers the question."  *Mathis*, 136 S. Ct. at 2256.  Or "the statute on its face may resolve the issue."  *Id.*  Specifically, "[i]f statutory alternatives carry different punishments, then under *Apprendi* they must be elements."  *Id.*  And some statutes even "identify which things must be charged (and so are elements) and which need not be (and so are means.)"  *Id.*  But "if a statutory list is drafted to offer 'illustrative examples,' then it includes only a crime's means of commission," and is not divisible.  *Id.*

Where state law is unclear on whether a state statute is divisible, we may "peek at the record documents" for "the sole and limited purpose of determining whether the listed items are elements of the offense."  *Id.* at 2256–57 (alterations and citation omitted).  If the indictment and jury instructions use all the terms from a state law, "[t]hat is as clear an indication as any that

each alternative is only a possible means of commission, not an element that the prosecutor must prove to a jury beyond a reasonable doubt." *Id.* at 2257. But the indictment and jury instructions conversely might "indicate, by referencing one alternative term to the exclusion of all others, that the statute contains a list of elements, each one of which goes toward a separate crime," and not merely a list of factual means by which a person might satisfy a single element. *Id.*

Where both state law and the record documents are unclear, "a sentencing judge will not be able to satisfy '*Taylor*'s demand for certainty' when determining whether a defendant was convicted of a" qualifying predicate offense. *Id.*

We have not before definitively answered the question of whether Ohio's felonious-assault and aggravated-assault statutes are divisible. *Anderson* did not address this question, at least regarding subsections (A)(1) and (A)(2) of each statute. *See Anderson*, 695 F.3d at 399-402. Since *Anderson*, we seem to have treated the Ohio felonious-assault statute both as divisible, *see Miller v. United States*, 561 F. App'x 485, 492 (6th Cir. 2014) (Ohio Revised Code § 2903.11 "is a divisible statute"); *United States v. Denson*, 728 F.3d 603, 613 (6th Cir. 2013) (listing subsections (A)(1) and (A)(2) as separate offenses), and as indivisible, *see Person v. Sheets*, 527 F. App'x 419, 424 & n.4 (6th Cir. 2013) ("the subdivisions 'set forth two means of committing the same offense'" (quoting *Brown*, 895 N.E.2d at 156)).

Turning to Ohio state law, then, each of the three ways *Mathis* describes to determine whether a statute is divisible points in the same direction: Ohio's felonious-assault and aggravated-assault statutes are both divisible, for the following reasons.

The first way *Mathis* describes to determine whether a statute is divisible is to look to see if "a state court decision" "definitively answers the question." *Mathis*, 136 S. Ct. at 2256. We are aware of no state court decision that does so. But we note that, as relevant here, the regular practice in Ohio state courts appears to involve charging defendants with only one subsection of Ohio's felonious-assault and aggravated-assault statutes, or of charging defendants with separate counts of Ohio aggravated assault or Ohio felonious assault under both subsections of the relevant statute. This regular practice indicates that Ohio state courts view Ohio's felonious-

assault and aggravated-assault statutes as divisible, setting out different crimes and not merely different factual means of accomplishing the same crime.

It is true that in *Brown*, the Ohio Supreme Court describes subsections (A)(1) and (A)(2) as "set[ting] forth two means of committing the same offense." 895 N.E.2d at 156. It is this language on which the panel in *Person* relied when treating Ohio's felonious-assault statute as indivisible. *See Person*, 527 F. App'x at 424 & n.4. But the Ohio Supreme Court in *Brown* and the panel in *Person* were dealing with double-jeopardy issues, and a deeper dive into *Brown* reveals that it does not definitively answer the question of whether Ohio's felonious-assault and aggravated-assault statutes are divisible for ACCA and Guidelines purposes. In *Brown*, the Ohio Supreme Court was determining whether aggravated assault under subsection (A)(1) and aggravated assault under subsection (A)(2) are "allied offenses of similar import" under Ohio Revised Code § 2941.25, "a legislative attempt to codify the judicial doctrine of merger," which precludes cumulative punishments for the same conduct. 895 N.E.2d at 156–57. The defendant in *Brown* had been charged with, and ultimately convicted of, one count of aggravated assault under subsection (A)(1) and one count of aggravated assault under subsection (A)(2). *See id.* at 154. "[E]ach conviction" arose from a single stabbing wound that the defendant inflicted on the victim. *Id.* The Ohio Supreme Court ultimately concluded that these two convictions could result in only one punishment under Ohio Revised Code § 2941.25 because "the General Assembly did not intend violations [of both subsections] to be separately punishable when the offenses result from a single act undertaken with a single animus." *Id.* at 156.[18]

In so holding, however, the Ohio Supreme Court did not prohibit prosecutors from charging a defendant with violating both subsections of a statute such as Ohio's felonious-assault and aggravated-assault statutes where the defendant either committed the crimes separately or had a separate animus for each violation. *See id.* at 153–54. Nor did it prohibit prosecutors from

---

[18]Along the way, the Ohio Supreme Court used some additional language that, taken out of context, could seem to indicate that Ohio's felonious-assault and aggravated-assault statutes are indivisible. *See id.* at 155 ("these two alternate theories of aggravated assault"); *id.* ("these two forms of aggravated assault"); *id.* at 156 ("subdivisions (1) and (2) set forth two means of committing the offense"); *id.* ("[t]hese subdivisions set forth two different forms of the same offense"). But read in context, the Ohio Supreme Court is referring to occasions such as the one in *Brown* where a prosecutor charges a defendant with committing aggravated assault under both subsections despite only one instance of conduct that might constitute aggravated assault.

charging a defendant with violating only a single subsection of a statute such as Ohio's felonious-assault and aggravated-assault statutes. *See id.* at 456 ("[t]he choice is given to the prosecution to pursue one offense or the other"). And a survey of recent Ohio intermediate appellate court decisions shows that persons are regularly charged under only one of the two subsections of Ohio's felonious-assault and aggravated-assault statutes or under both subsections of the relevant statute separately. *See, e.g.*, *State v. Harwell*, No. 27658, 2018 WL 2277772, at *1 (Ohio Ct. App. May 18, 2018) (defendant was charged with two separate counts of felonious assault under Ohio Revised Code § 2903.11(A)(2) and one count of felonious assault under Ohio Revised Code § 2903.11(A)(1)); *State v. Perez*, No. WD-17-017, 2018 WL 2278169, at *1 (Ohio Ct. App. May 18, 2018) ("An indictment for felonious assault in violation of [Ohio Revised Code §] 2903.11(A)(1) . . . was filed against appellant."); *State v. Collins*, No. 106050, 2018 WL 2149204, at *1 (Ohio Ct. App. May 10, 2018) (defendant was charged with two separate counts of felonious assault under Ohio Revised Code § 2903.11(A)(2) and two separate counts of felonious assault under Ohio Revised Code § 2903.11(A)(1)); *State v. Johnson*, No. L-16-1282, 2018 WL 1989582, at *3 (Ohio Ct. App. Apr. 27. 2018) (grand jury "indicted Jawaun of . . . felonious assault, in violation of [Ohio Revised Code §] 2903.11(A)(2)").

We recognize that the stray language from the Ohio Supreme Court's opinion in *Brown*, taken out of context, could be viewed as indicating that Ohio's felonious-assault and aggravated-assault statutes are indivisible. But that case was about a wholly different issue, and we therefore will not permit it to outweigh the more-recent regular practice in the Ohio state courts.

The second way *Mathis* describes to determine whether a statute is divisible is to look to see if "the statute on its face [] resolve[s] the issue." *Mathis*, 136 S. Ct. at 2256. Each of these statutes on its face appears to be divisible. Each appears to set forth one or more elements of the offense in the alternative, thereby defining multiple crimes. *See Descamps*, 570 U.S. at 257; *Mathis*, 136 S. Ct. at 2249. Using Ohio's felonious-assault statute as an example, Ohio Revised Code § 2903.11(A)(1) criminalizes (1) "knowingly" (2) "[c]aus[ing]" (3) "serious physical harm" (4) "to another or another's unborn." Ohio Revised Code § 2903.11(A)(2), by contrast, criminalizes (1) "knowingly" (2) "[c]aus[ing] or attempt[ing] to cause" (3) "physical harm" (4) "to another or another's unborn" (5) "by means of a deadly weapon or dangerous ordnance."

These appear to be alternative elements, not alternative factual means of satisfying a single set of elements.

The third, albeit related, way *Mathis* describes to determine whether a statute is divisible is to look to see "[i]f statutory alternatives carry different punishments," because if they do, "then under *Apprendi*[19] they must be elements." *Mathis*, 136 S. Ct. at 2256. Again using Ohio's felonious-assault statute as the example, Ohio Revised Code § 2903.11(D)(1)(a) increases the seriousness of felonious assault from a second-degree felony to a first-degree felony if the victim is a "peace officer," regardless of whether the defendant is convicted under subsection (A)(1) or subsection (A)(2). But Ohio Revised Code § 2903.11(D)(1)(b) imposes an additional mandatory prison term if the victim both is a "peace officer" and "suffer[s] serious physical harm." *Accord* Ohio Revised Code § 2903.12(B) (similarly imposing a mandatory prison term where the victim is a peace officer and suffers serious physical harm). A conviction under subsection (A)(1) of each statute, where the victim is a "peace officer," carries a different and greater punishment than does a conviction under subsection (A)(2) of each statute where the victim is a "peace officer." And, under *Mathis*, that means the subsections must be elements. 136 S. Ct. at 2256. In sum, Ohio's felonious-assault and aggravated-assault statutes are divisible; subsection (A)(1) and subsection (A)(2) of each statute set forth a separate crime. Having previously established that subsection (A)(1) is too broad to qualify as a violent-felony predicate, we now turn to examining subsection (A)(2).

## C.

Subsection (A)(2) prohibits "[c]aus[ing] or attempt[ing] to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordinance." O.R.C. § 2903.11(A)(2). Ohio statutorily defines a "[d]eadly weapon" as "any instrument, device, or thing capable of inflicting death, and designed or specifically adapted for use as a weapon, or possessed, carried, or used as a weapon." O.R.C. § 2923.11(A). "Physical harm" is defined by Ohio as "any injury, illness, or other physiological impairment, regardless of its gravity or duration." O.R.C. § 2901.01(A)(3). Since the use of a "deadly weapon" or "dangerous

---

[19]*Apprendi v. New Jersey*, 530 U.S. 466, 489 (2000).

ordinance" while "[c]aus[ing] or attempt[ing] to cause physical harm" is necessary for a conviction under subsection (A)(2), it follows logically that using a device "capable of inflicting death" satisfies the element clause's use, attempted use, or threatened use of violent physical force.

However, we need not even rely on logic and common sense because this court has already answered this question several times and come to the same conclusion. The Sixth Circuit has adopted, as have other circuits,[20] what is colloquially called the "deadly weapon rule" that is dispositive for this analysis unless applicable state law demands otherwise (here it does not): "When a felony must be committed with a deadly weapon and involves some degree or threat of physical force, it is a crime of violence under the elements clause." *Harris*, F.3d at 321. It is worth noting that "the degree or threat of physical force" contemplated by the offense need be no greater than that of common law battery. *Id*. We find no basis in the statutory language or relevant case law to distinguish between the "deadly weapon" and "dangerous ordinance."

Tellingly, Burris does not cite (nor can we find) a single instance of Ohio courts' applying subsection (A)(2) to conduct that does not qualify under the Guidelines elements clause. Given the statutory language, Ohio case law, and our own precedents, we find that a conviction under subsection (A)(2) qualifies as a violent-felony predicate under the Guidelines.

D.

The subsection (A)(1) version of each offense is too broad to qualify categorically as a violent-felony predicate under the ACCA and Guidelines elements clauses. Therefore, sentencing courts should employ the modified categorical approach to determine whether a defendant was convicted of the (A)(1) version of the offense or the (A)(2) version of the offense. If the defendant was convicted under the (A)(1) version of either offense, that offense does not qualify as a violent-felony conviction under the ACCA or Guidelines elements clauses.[21] If a defendant was convicted under the (A)(2) version of either offense, that offense does qualify as a

---

[20]*See e.g.*, *United States v. Whindleton*, 797 F.3d 105, 114 (1st Cir. 2015); *United States v. Herrera-Alvarez*, 753 F.3d 132, 138 (5th Cir. 2014); *United States v. Ramon Silva*, 608 F.3d 663, 670 (10th Cir. 2010).

[21]And, as discussed above, that offense does not qualify under either the Guidelines enumerated-offense clause or the Guidelines residual clause, for those persons sentenced while the Guidelines still had a residual clause.

violent-felony predicate under the ACCA and Guidelines elements clauses. Burris does not argue otherwise. And if the *Shepard* documents in a particular case do not make clear under which subsection of the relevant statute a defendant was convicted, sentencing courts must "presume that the conviction rested upon nothing more than the least of the acts criminalized," *Moncrieffe*, 569 U.S. at 190–91, which means that the conviction does not qualify as a predicate under either the ACCA or the Guidelines elements clauses.

*Anderson* did not engage in this divisibility analysis, s*ee Anderson*, 695 F.3d at 399–402, probably because the Supreme Court opinions most clearly setting forth this required analysis, *Descamps* and *Mathis*, had not yet been decided. This divisibility analysis is nevertheless now clearly required under the Supreme Court's categorical-approach and modified-categorical-approach jurisprudence. Still, even after *Descamps* and *Mathis*, panels of this court have considered themselves bound by *Anderson*. *See, e.g.*, *Williams*, 875 F.3d at 805. After all, our longstanding rule is that "[a] panel of this Court cannot overrule the decision of another panel. The prior decision remains controlling authority unless an inconsistent decision of the United States Supreme Court requires modification of the decision or this Court sitting en banc overrules the prior decision." *See Salmi v. Sec'y of Health and Human Servs.*, 774 F.2d 685, 689 (6th Cir. 1985) (citation omitted).

We now hold that, for two reasons, *Anderson* is no longer binding law. *First*, *Anderson* was wrongly decided because it failed to recognize that Ohio's statutory definition of "serious physical harm" includes certain serious mental harms, and because state courts in fact do apply Ohio's felonious-assault and aggravated-assault statutes to conduct that does not involve the use, attempted use, or threatened use of physical force against the person of another. *Second*, in the post-*Anderson* cases of *Descamps* and *Mathis* the Supreme Court has made it clear that federal sentencing courts must conduct a divisibility analysis, and the *Anderson* majority—albeit understandably—did not do so. With those mistakes now obvious, it is untenable to allow *Anderson* to continue both to require the district courts in this circuit to enhance defendants' prison sentences based on criminal convictions that we know do not qualify under the ACCA and Guidelines elements clauses, and to require panels of this court to affirm those incorrectly enhanced sentences. *Cf. Hicks v. United States*, 137 S. Ct. 2000, 2001 (2017) (Gorsuch, J.,

concurring) ("For who wouldn't hold a rightly diminished view of our courts if we allowed individuals to linger longer in prison than the law requires only because we were unwilling to correct our own obvious mistakes.").

Having concluded that (1) Ohio's felonious-assault and aggravated-assault statutes are too broad to qualify categorically as violent-felony predicates under the ACCA and Guidelines elements clauses, (2) that both statutes are divisible, and (3) that only the (A)(2) version of each statute qualifies as a violent-felony predicate under the ACCA and Guidelines elements clauses, we conclude the analysis. The *Shepard* documents in this case[22] make clear that Burris was sentenced for the (A)(2) version of Ohio felonious assault. Burris is therefore unable to show that any error in his case, even if it was plain or obvious or clear, affected his substantial rights.

IV.

For the foregoing reasons, we AFFIRM the judgment of the district court.

---

[22]We have held that Ohio state-court journal entries, such as the ones the government has submitted here, constitute valid *Shepard* documents. *See United States v. Adkins*, 729 F.3d 559, 567–68 (6th Cir. 2013)

———————————

## CONCURRENCE

———————————

THAPAR, Circuit Judge, concurring. After leading police on a high-speed chase, Le'Ardrus Burris rammed his vehicle into a police officer, "throwing him backwards for 15 feet." R. 496, Pg. ID 3684. As a result of this action, an Ohio jury convicted Burris of felonious assault. A casual reader of today's decision might struggle to understand why we are even debating if ramming a vehicle into a police officer is a crime of violence. The reader's struggle would be understandable. The time has come to dispose of the long-baffling categorical approach. My colleagues have repeatedly said as much, and I urge any frustrated readers of today's decision—particularly Congress or the Sentencing Commission—to read and heed their words. *See, e.g.*, *Mathis v. United States*, 136 S. Ct. 2243, 2266–71 (2018) (Alito, J., dissenting); *Cradler v. United States*, 891 F.3d 659, 672 (6th Cir. 2018) (Kethledge, J., concurring); *United States v. Valdivia-Flores*, 876 F.3d 1201, 1210–11 (9th Cir. 2017) (O'Scannlain, J., specially concurring); *United States v. Davis*, 875 F.3d 592, 595, 604 (11th Cir. 2017) (Ed Carnes, C.J.); *United States v. Chapman*, 866 F.3d 129, 136–39 (3d Cir. 2017) (Jordan, J., concurring); *United States v. Faust*, 853 F.3d 39, 60–61 (1st Cir. 2017) (Lynch, J., concurring); *United States v. Tavares*, 843 F.3d 1, 19 (1st Cir. 2016) (Kayatta, J.); *United States v. Doctor*, 842 F.3d 306, 312–19 (4th Cir. 2016) (Wilkinson, J., concurring). I write to join them and to suggest a possible path forward.

As the jurists before me have explained, there are two big problems with the categorical approach. First, the categorical approach is an elements lottery that leads to arbitrary results. Second, it is very difficult to administer. Both problems are on display here.

*The elements lottery.* Under the categorical approach, whether a prior state conviction qualifies as a crime of violence is a matter of chance that depends on how a state legislature and its judiciary have defined and interpreted the crime. This leads to some absurd results. For example, a North Carolina conviction for "knowingly discharging a firearm into an occupied building" or for raping a "mentally disabled person" is not a crime of violence. *Doctor*, 842 F.3d

at 315 (Wilkinson, J., concurring).  In Florida, a conviction for attempted second degree murder is not a crime of violence, and in Oklahoma, a conviction for kidnapping is not.  *Id.*

The absurd results are even more apparent in our circuit.  As the majority opinion correctly notes, if you are in Cincinnati, Ohio, and you "cause serious physical harm to another," it is not a crime of violence.  But if you drive one mile across the Ohio River and commit the very same crime in Kentucky, it *is* a crime of violence—all because the analogous statute in Kentucky defined serious physical harm a little differently.  *See* Ky. Rev. Stat. Ann. § 508.040; *United States v. Maynard*, 894 F.3d 773, 775 (6th Cir. 2018); *United States v. Colbert*, 525 F. App'x 364, 369–70 (6th Cir. 2013).  So an increased sentence in this circuit turns not on whether a defendant's aggravated assault was actually violent, but on where the assault took place.  In the future, those who have prior convictions for aggravated assault under subsection (A)(1) in Ohio will not be labeled a career offender, but those who have an identical conviction in Kentucky for the exact same conduct will be.

But the arbitrariness does not stop there.  Each circuit decides for itself whether a crime qualifies as a crime of violence.  For example, subsection (A)(1) of the Ohio felonious assault statute is no longer a crime of violence in this circuit, but it may still be a crime of violence in other circuits.  *United States v. Clark*, 131 F. App'x 29, 30 (4th Cir. 2005) (per curiam).  In other words, whether a defendant commits felonious assault in Ohio could matter less than where he commits a later crime.  *Id.*; *see also, e.g.*, *United States v. Harris*, 844 F.3d 1260, 1262 (10th Cir. 2017) (observing that of eleven circuits to have considered whether robbery is a "violent felony," five say no, and six say yes), *cert. denied*, 138 S. Ct. 1438 (2018); *compare United States v. Fluker*, 891 F.3d 541, 549 (4th Cir. 2018) (holding that Georgia's robbery statute is indivisible and not a crime of violence), *with United States v. Cooper*, 689 F. App'x 901, 906–07 (11th Cir. 2017) (holding that Georgia's robbery statute is divisible and thus that robbery by sudden snatching is a crime of violence).  So here again, geography matters more than actual violence under the categorical approach.

And yet arbitrariness abounds even within single states.  In Ohio, subsection (A)(1) of the felonious and aggravated assault statutes is no longer a crime of violence, but subsection (A)(2) is.  As the majority opinion properly explains, these subsections set forth separate but similar

crimes. Each prohibits knowingly causing physical harm to another. The difference is that subsection (A)(1) applies when the defendant caused *serious* physical harm, and subsection (A)(2), requiring only physical harm, applies when the defendant used a deadly weapon or dangerous ordnance. *Compare* Ohio Rev. Code Ann. § 2903.11(A)(1), *with id.* § 2903.11 (A)(2). After today's decision, a person's prior conviction for felonious assault would not be a violent felony if he had caused the victim to have a seizure and a serious brain injury by violently striking her dozens of times with his fists. *See State v. Perez*, No. WD-17-017, 2018 WL 2278169, at *1 (Ohio Ct. App. May 18, 2018). But if he had instead caused a bruise on the victim's leg by striking her with a crowbar, it likely would be a violent felony. *See State v. Smith*, No. 14 CA 83, 2015 WL 1884222, at *2 (Ohio Ct. App. Apr. 24, 2015). One must accept some level of arbitrariness with any law, but not the amount here, which a fact-based approach would avoid.

*Administrative problems.* The arbitrariness of the categorical approach ties in with its second flaw: the costs of administering the approach outweigh its benefits. Some initially thought that avoiding an inquiry into the facts of a prior conviction would be easier for judges. *Taylor v. United States*, 495 U.S. 575, 601 (1990). And, to be sure, looking into the facts behind a prior conviction could be difficult in some cases where state records are unclear. This was particularly so in the pre-digital age in which the categorical approach emerged, when electronic filing was not commonplace. But whatever administrative difficulty a factual approach still hazards, the categorical approach ups the ante. By "simply swapp[ing] factual inquiries for an endless gauntlet of abstract legal questions," the categorical approach requires judges to throw away common sense. *Doctor*, 842 F.3d at 313 (Wilkinson, J., concurring); *see Davis*, 875 F.3d at 595. Each categorical-approach case (and there is no shortage of them) instead requires the judge to (1) mull through any number of hypothetical ways to commit a crime that have nothing to do with the facts of the prior conviction; (2) mine electronic databases for state court cases (precedential or not) depicting non-violent ways of commission; and (3) scrutinize those state court cases, some of which are old and predate the categorical approach, to determine their import. *See Doctor*, 842 F.3d at 313 (Wilkinson, J., concurring). Here, this meant that our court (1) considered hypothetical ways to feloniously assault someone without actually striking them, such as by exposing a child to his mother's dead body; (2) poured over countless Ohio Court of

Appeals decisions, some decades-old, *e.g.*, *State v. Elliott*, 663 N.E.2d 412 (Ohio Ct. App. 1995); and (3) tried to decide if one or two of those decisions, almost all involving violence, nevertheless demonstrate that Ohio felonious assault can be committed nonviolently. No judge who has engaged in this "Rube Goldberg jurisprudence" or traveled to this "pretend place" leaves thinking that life has been made easier. *Davis*, 875 F.3d at 595; *Tavares*, 843 F.3d at 19. And any judge who could end the matter upon finding that a defendant actually committed a violent act would find that task more administrable. This is particularly so when—as here—that question is undisputed.

In light of these problems, I join others in proposing an alternative approach. That approach would permit judges to deem a prior conviction a crime of violence if the underlying criminal conduct was actually violent. If the government can prove that the state court record establishes violent conduct, end the inquiry there. *See Mathis*, 136 S. Ct. at 2269–70 (Alito, J., dissenting). If the government cannot, or if the record is insufficient to sustain the government's burden of proof, then the prior conviction does not count. *See id.* (Alito, J., dissenting).

I recognize that a fact-based approach is not without its own potential problems. Any difficulty in proving the facts underlying a past conviction would inure to the benefit of the defendant, meaning a defendant's career-offender status could turn not on the violence of his conduct, but on record-keeping. But it is incumbent on the government to keep good records whenever the government asks a court to put a defendant in prison, and it should be no different here. *United States v. Dupree*, 323 F.3d 480, 491 (6th Cir. 2003) (observing that the government must prove whether a sentencing enhancement applies). And in the new world of electronic filing, many of the records will be readily available going forward. In addition, requiring sentencing courts to probe the facts underlying a conviction could pose Sixth Amendment problems, at least in the ACCA context. *See Mathis*, 136 S. Ct. at 2259 (Thomas, J., concurring). But whatever the difficulty of those problems under the ACCA, the Sixth Amendment presents no obstacle under the advisory Sentencing Guidelines. *United States v. Sanders*, 406 F. App'x 995, 997–98 (6th Cir. 2011); *cf. Beckles v. United States*, 137 S. Ct. 886, 892 (2017) ("Unlike the ACCA, however, the advisory Guidelines do not fix the permissible range of sentences."). Therefore, Congress and the Sentencing Commission are well-positioned to make a change for

the better.  I urge them to consider such a change so courts no longer have to "delve into pointless abstract questions" when determining whether striking a police officer with a car is a crime of violence. *See Mathis*, 136 S. Ct. at 2268 (Alito, J., dissenting).

I respectfully concur.

---

**CONCURRING IN PART AND IN THE JUDGMENT**

---

ROGERS, Circuit Judge. I concur in the result, and in the following parts of the lead opinion: Parts I and II, all but the last sentence of Part III.B, and Part III.C. For the reasons given by Judge Kethledge, we ought not address in this case whether *United States v. Anderson*, 695 F.3d 390 (6th Cir. 2012), was rightly decided. The problematic part of *Anderson* poses no problem for the defendant before the court. To resolve this appeal, we need only conclude that Ohio Rev. Code § 2903.11(A) is divisible and that § 2903.11(A)(2) describes a crime of violence under the Armed Career Criminal Act and the Guidelines. The lead opinion rightly resolves these issues, and I join the portions of the lead opinion that so hold. Burris was properly sentenced as a career offender.

---

**CONCURRING IN THE JUDGMENT**

---

KETHLEDGE, Circuit Judge, concurring in the judgment. The idea of judicial restraint encompasses not only the content of our decisions, but also whether we should make them in the first place. Advisory opinions, everyone agrees, are out of bounds. *See, e.g.*, *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998); *Hayburn's Case*, 2 U.S. 408 (1792). And dictum is usually a bad idea, because judges think differently—more carefully, more focused, more likely to think things through—when our words bring real consequences to the parties before us. (The same criticism goes for alternative holdings.) Yet when judges do indulge in dictum, at least, it typically amounts to only a stray comment or two on matters incidental to the real issue in the case.

But here, respectfully, dictum is the *raison d'être* for the plurality's opinion. We reheard this case en banc to revisit our decision in *United States v. Anderson*, 695 F.3d 390 (6th Cir. 2012), which most of the en banc court agrees was mistaken to the extent it held that Ohio Rev. Code § 2903.11(A)(1) describes a "crime of violence" under the Armed Career Criminal Act. That part of *Anderson*'s holding, of course, would have real consequences in a case where the defendant's sentence was enhanced as a result of a prior conviction under § 2903.11(A)(1). But Burris instead has a prior conviction under § 2903.11(A)(2), which does describe a crime of violence under the ACCA. Thus we could decide this case simply by holding (as the plurality correctly holds) that § 2903.11(A) is divisible and that the particular crime of which Burris was previously convicted—namely § 2903.11(A)(2)—is a crime of violence. That is reason enough to deny him relief. The question whether § 2903.11(A)(1) describes a crime of violence, therefore, is not a matter in controversy in this case. Hence the court's discussion of that issue is dictum—indeed dictum so central to the court's opinion as to render it nearly advisory. *See, e.g., Chafin v. Chafin*, 568 U.S. 165, 172 (2013).

I therefore concur only in the judgment.

---

**CONCURRING IN PART AND DISSENTING IN PART**

---

COLE, Chief Judge, concurring in part, dissenting in part.   Despite growing concerns regarding mass incarceration, federal law imposes longer prison sentences on certain individuals deemed "career criminals."   Although a seemingly simple concept, courts across the country have struggled to determine which crimes qualify as violent offenses under both the ACCA and the Guidelines.   This is one such case.

Here, the court asks whether a conviction under Ohio's felonious assault statute qualifies as a violent-felony predicate under the Guidelines and the ACCA.   As the lead opinion notes, in 2012, a panel of this court held that both Ohio felonious assault and aggravated assault qualify as violent-felony predicates under the ACCA.   *See United States v. Anderson*, 695 F.3d 390, 399– 402 (6th Cir. 2012).   But in the time since *Anderson* was decided, the Supreme Court has clarified the appropriate analysis for reviewing whether certain convictions qualify as violent offenses for sentencing enhancements.   *See Mathis v. United States*, 136 S. Ct. 2243, 2248–49 (2016).   In light of these developments, we granted en banc review to revisit *Anderson*.   While I concur in the lead opinion's holding that *Anderson* was wrongly decided and should be overruled, my agreement ends there.

**I.**

The lead opinion states that two analyses must be done in this case:   "One is an overbreadth analysis to determine whether the statute in question is too broad to categorically qualify as a violent-felony predicate because it criminalizes more conduct than is described in the ACCA and Guidelines . . . .   The other is a divisibility analysis . . . ."   Lead Op. 6.   In a footnote, the lead opinion notes that it expresses "no opinion as to the order in which these two issues should be addressed in other cases, noting only that in this case, addressing overbreadth first is the more useful approach."   Lead Op. 11, n.6.   I disagree.   The Supreme Court has explicitly stated that the divisibility analysis should be conducted first.   *See Mathis*, 136 S. Ct. at 2256 ("The first task for a sentencing court faced with an alternatively phrased statute is [] to

determine whether its listed items are elements or means."). This makes sense, as the so-called "overbreadth analysis" is necessarily *dependent* on the divisibility analysis. I thus struggle to see how analyzing the statute in its entirety (as if the statute were indivisible) is the more useful approach. The practical reality of doing so—as Judge Rogers and Judge Kethledge recognize— is that an opinion can begin to look advisory. With that said, in performing the "overbreadth analysis," the lead opinion correctly overrules *Anderson* and I concur in the stated reasons for doing so. As a matter of practicality and common-sense, however, and for the reasons described below, I would conduct the divisibility analysis first, and then turn to the analysis of the statute at issue.[1]

## A.

The Guidelines' career-offender provision applies a sentencing enhancement if, as relevant here, the defendant has at least two prior felony convictions of either a "crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a). At the time of Burris's sentencing, the Guidelines defined a "crime of violence" as any crime punishable by over one-year imprisonment that:

---

[1]Some might find it strange to engage in a divisibility analysis when Burris was convicted of an identified subsection of the felonious assault statute. Why not simply ask whether that subsection satisfies the elements clause? We must first ask the divisibility question because it tells us whether the identification of the specific subsection is significant. As explained in *Mathis,* if the aggravated assault and felonious assault statutes are divisible, Burris's conviction of subsection (A)(2) tells us that the jury necessarily found each of the elements of that subsection. But if the offenses are not divisible, Burris's conviction of a specific subsection simply tells us the "brute facts" of his offense, not the elements. *Mathis*, 136 S. Ct. at 2248 (internal quotation marks omitted). In the latter case, the situation is analogous to the hypotheticals discussed by the dissenting justices in *Mathis—Shepard* documents that unequivocally establish that the defendant was convicted of breaking into a building, not a boat or tent. Notwithstanding these arguments, the *Mathis* majority held that if the offense is not divisible, the facts, or means, are irrelevant. Because the divisibility analysis (*see infra* pp. 37–42) reveals that Ohio sometimes treats the aggravated assault and felonious assault offenses as divisible and sometimes treats them as setting forth alternative means of committing a single offense, the concerns animating the Court's decision in *Mathis* are applicable. Indeed, in Burris's direct appeal of his felonious assault conviction, the Ohio Court of Appeals erroneously stated, "Felonious assault under [O.]R.C. 2903.11(A)(2) provides that no person shall knowingly cause serious physical harm to another," *State v. Burris*, No. 24088, 2008 WL 4151321, at *3 (Ohio Ct. App. Sept. 10, 2008), thus supporting that the Ohio courts sometimes merge or conflate the two subsections and do not consistently treat them as setting forth distinct offenses. *See, e.g.*, *State v. Jackson*, No. 82724, 2004 WL 1045402, at *3 (Ohio Ct. App. May 6, 2004) (holding that "trial court did not err by failing to issue separate instructions" for each subsection because "the evidence presented in this case was sufficient . . . to find the [defendant] guilty of felonious assault under either applicable code section"); *State v. Chappell*, No. 79589, 2002 WL 337726, at *4 (Ohio Ct. App. Feb. 21, 2002) (same).

(1) Has as an element the use, attempted use, or threatened use of physical force against the person of another ["the elements clause"]; or

(2) is burglary of a dwelling, arson, or extortion, involves use of explosives [the "enumerated clause"], or otherwise involves conduct that presents a serious potential risk of physical injury to another ["the residual clause"].

U.S.S.G. § 4B1.2(a)(2015). Two weeks after Burris was sentenced, the Guidelines were amended and the residual clause was removed. *See* U.S.S.G. § 4B1.2(a); *see also United States v. Smith*, 881 F.3d 954, 959 n.1 (6th Cir. 2018) ("In 2016, the U.S. Sentencing Commission removed the residual clause and replaced it with a fuller list of enumerated offenses.").

In reviewing potential predicate crimes, courts apply "a 'categorical' approach to determine the nature of a prior conviction," and whether it qualifies as a crime of violence. *United States v. Denson*, 728 F.3d 603, 607 (6th Cir. 2013). "Under the 'categorical approach,' courts must compare the elements of the statute of conviction to the elements of the generic definition of the offense." *Cradler v. United States*, 891 F.3d 659, 667 (6th Cir. 2018) (citing *Taylor v. United States*, 495 U.S. 575, 599–600 (1990)). Put another way, if the statute of conviction criminalizes *more* conduct than a "crime of violence" as defined by the Guidelines, then the statute is deemed "overbroad" and the conviction does not qualify as a "crime of violence" for sentencing enhancement purposes. *See id.* ("If the statute of conviction criminalizes more conduct than the generic definition [in the ACCA], then that conviction is not the same offense enumerated in the ACCA's 'violent felony' definition" and "is not a violent felony for ACCA purposes."). In applying the categorical approach, courts are prohibited from looking to the particular facts underlying the conviction. *See Cradler*, 891 F.3d at 667. In other words, how a defendant actually perpetrated the crime "makes no difference." *Mathis*, 136 S. Ct. at 2251.

The comparison of elements under the categorical approach involves a straightforward analysis "when a statute sets out a single (or 'indivisible') set of elements to define a single crime." *Id.* at 2248. If a statute is indivisible, a court need only line up the crime's statutory elements alongside those of the Guidelines' elements and see if they match. *See id.* But, as the Supreme Court has recognized, some statutes' structures are more complicated, making the comparison of elements more difficult. *Id.* at 2249. At times, a "defendant's prior conviction is

based on a statute that sets out one or more elements of the offense in the alternative, thereby defin[ing] multiple crimes." *Cradler*, 891 F.3d at 668 (citations and quotations omitted). These statutes, referred to as "divisible statutes," add an additional level of analysis for courts when determining "which set of statutory elements the defendant violated." *Id.*

Mindful of such situations, the Supreme Court has "suggested that courts may need to 'go beyond the mere fact of conviction' and look to the facts underlying a conviction in order to determine which element or set of elements was the basis of the defendant's conviction." *Id.* (citing *Taylor v. United States*, 495 U.S. 575, 602 (1990)). In these circumstances—where a statute contains multiple alternative elements—the "modified categorical approach" should be utilized. *Mathis*, 136 S. Ct. at 2249. Under this approach, a court may look to a limited class of documents, such as the indictment, jury instructions, or plea agreement, "to determine what crime, with what elements, a defendant was convicted of." *Id.*; *see also Descamps v. United States*, 570 U.S. 254, 257 (2013) ("[T]he modified categorical approach permits sentencing courts to consult a limited class of documents, such as indictments and jury instructions, to determine which alternative formed the basis of the defendant's prior conviction.").

This court recently explained the interplay of the modified categorical approach and the categorical approach:

> When we speak of the "modified approach," we simply refer to this additional analytical step in cases involving divisible statutes. After utilizing this additional step to determine which elements in the statute formed the basis of the defendant's prior conviction, courts resume their application of the categorical approach as they would in any other case. "[T]he modified approach merely helps implement the categorical approach when a defendant was convicted of violating a divisible statute. The modified approach thus acts not as an exception, but instead as a tool. It retains the categorical approach's central feature: a focus on the elements, rather than the facts, of a crime." [*Descamps*, 570 U.S.] at 263.

*Cradler*, 891 F.2d at 668. Put simply, the modified categorical approach is to be used only when a statute is deemed divisible. *See id.*

Thus, despite the lead opinion's contention to the contrary, whether a statute is divisible or indivisible is a threshold issue. *Id.* (quoting *Descamps*, 570 U.S. at 263).

**B.**

As the lead opinion recognizes, this court has never held definitively in a published opinion whether Ohio's felonious assault statute is divisible or indivisible. Lead Op. 19. I agree with the lead opinion that the time has come to provide a clear answer. Regrettably, I disagree with the answer provided.

To determine a statute's divisibility, we look first to state law, and then to the statute itself—namely the structure and whether statutory alternatives carry different punishments. *United States v. Ritchey*, 840 F.3d 310, 318 (6th Cir. 2016). If these sources fail to provide a definitive answer, we turn to the record of conviction. *Id.* (citing *Mathis*, 136 S. Ct. at 2256–57). Here, the question is whether Ohio's felonious assault statute lists multiple elements disjunctively (divisible), or enumerates various factual means of committing a single offense (indivisible).

The lead opinion claims that each factor supports a finding of divisibility. I disagree. The lead opinion acknowledges only the factors supporting divisibility, while conveniently ignoring other relevant considerations. Importantly, after performing a divisibility analysis, if a court "still cannot discern whether a statute presents elements or means, *the statute is indivisible*." *United States v. Stitt*, 860 F.3d 854, 862 (6th Cir. 2017), *rev'd on other grounds*, 139 S. Ct. 399 (2018) (citing *Mathis*, 136 S. Ct. at 2257) (emphasis added); *see also Shepard v. United States*, 544 U.S. 13, 21 (2005) (noting the "demand for certainty" in the analysis as required by the Supreme Court in *Taylor*). The lead opinion acknowledges this demand for certainty in principle, Lead Op. 19, but fails to apply it in practice.

The first consideration under *Mathis* is seemingly dispositive: whether "a state court decision definitively answers the question." 136 S. Ct. at 2256. *Mathis* explained that if a "ruling of that kind exists, a sentencing judge need only follow what it says." *Id.* In *State v. Brown*, the Ohio Supreme Court analyzed Ohio's aggravated assault statute[2] and stated that the

---

[2]Because the aggravated assault statute is nearly identical to the felonious assault statute, the reasoning and holding in cases analyzing one statute have been found to apply equally to both statutes. *See Person v. Sheets*, 527 F. App'x 419, 424, n.4 (6th Cir. 2013) (applying *Brown*'s interpretation of Ohio's aggravated assault statute to Ohio's felonious assault statute because the relevant subdivisions "are identical under both statutes").

two subdivisions "set forth two means of committing the same offense[.]" 895 N.E.2d 149, 150 (Ohio 2008). The opinion contains additional language suggesting that the statute sets out two means to commit the same crime. *See Brown*, 895 N.E.2d at 155 ("these two alternate theories of aggravated assault"); *id.* ("these two forms of aggravated assault"); *id.* at 156 ("subdivisions (1) and (2) set forth two means of committing the offense").

But the ultimate holding of the Ohio Supreme Court was as follows: "the General Assembly did not intend violations of [O.]R.C. 2903.11(A)(1) and (A)(2) to be separately punishable when the offenses result from a single act undertaken with a single animus. Thus, aggravated assault in violation of [O.]R.C. 2903.12(A)(1) and (A)(2) are allied offenses of similar import." *Id.* at 156. The opinion makes clear that the purpose of the "allied offenses of similar import" inquiry is to prevent a defendant from receiving cumulative sentences for a single instance of conduct in violation of the Double Jeopardy Clause. *Id.* at 152; *see also* O.R.C. § 2941.25(A) ("Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one."). Thus, while the language in *Brown* at least seems to suggest that Ohio's felonious assault and aggravated assault statutes contain two means of committing the same offense—making the statutes indivisible—I recognize the lead opinion's notion that the context of the case casts some doubt as to whether the Ohio Supreme Court *definitively* answered the question as *Mathis* requires. To say this factor *supports* divisibility, though, is misleading, at best.

A survey of recent Ohio appellate cases similarly fails to provide certainty. It is true that one could cite—as the lead opinion does—numerous Ohio appellate court decisions that show that defendants are regularly charged under only one of the two felonious assault subsections, or, alternatively, under both subsections of the statute separately. *See* Lead Op. 21. And these cases certainly lend support to divisibility. But it is equally true that just as many recent Ohio appellate court cases charge felonious assault as a single crime, without differentiating between subsections, therefore supporting indivisibility. *See, e.g.*, *State v. Perry*, No. 17CO0009, __ N.E.3d __, 2018 WL 4677661, at *1 (Ohio Ct. App. September 24, 2018) (defendant indicted on "one count of felonious assault, a felony of the second degree in violation of [O.]R.C.

2903.11(A)"); *State v. Kennedy*, No. 8-18-01, 2018 WL 4961487, at *1 (Ohio Ct. App. Oct. 15, 2018) (defendant indicted for felonious assault in violation of O.R.C. § 2903.11(A), without specifying a subsection); *State v. Betters*, No. 17AP-901, 2018 WL 4896813, at *1 (Ohio Ct. App. Oct. 9, 2018) (defendant indicted on "one count of felonious assault in violation of [O.]R.C. 2903.11"). Indeed, a case currently before this en banc court illuminates this very principle. *See Williams v. United States*, 875 F.3d 803 (6th Cir. 2017), *reh'g en banc granted*, *vacated by* 882 F.3d 1169 (6th Cir. 2018) (A grand jury indicted Williams for one count of felonious assault under § 2903.11, charging that he "knowingly cause[d] serious physical harm to [the victim] *and/or* did knowingly cause or attempt to cause physical harm to [victim] by means of a deadly weapon or dangerous ordnance[.]") (emphasis added); (R. 39-3, PageID 227). The conflicting cases demonstrate that this factor cannot "support" divisibility. Any assertion to the contrary is disingenuous.

Because I believe no conclusive state court decisions exist, I would next look to the additional factors as directed by *Mathis*. One such factor is the punishment delineated in the statute: "[i]f statutory alternatives carry different punishments, then under *Apprendi* [*v. New Jersey*, 530 U.S. 466, 489 (2000)] they must be elements[,]" as opposed to means. *Mathis*, 136 S. Ct. at 2256. The lead opinion notes that under O.R.C. § 2903.11(D)(1)(b), a mandatory prison term is imposed if a defendant commits felonious assault against a "peace officer" who "suffer[s] serious physical harm." Lead Op. 22. The lead opinion finds that because the term "serious physical harm" is found only in subsection (A)(1), the two subsections carry different punishments, making the statute divisible.

Yet the two subsections of Ohio felonious assault do not carry different punishments. It is true that felonious assault on a peace officer carries a mandatory prison term if the officer suffers "serious physical harm," but Ohio courts have treated peace-officer felonious assault as an entirely different crime than ordinary felonious assault. *See, e.g.*, *State v. Mundy*, No. 05CA0025-M, 2005 WL 3416186, at *1 (Ohio Ct. App. Dec. 14, 2005) (affirming conviction that included two counts of peace-officer felonious assault and three counts of ordinary felonious assault); O.R.C. § 2903.11(D)(1)(a) (specifying that "a violation of division (A)" constitutes a felony in the first degree if the victim is a peace officer, as opposed to a felony in the second

degree if the victim is not a peace officer).  Ironically, the lead opinion seemingly recognizes that felonious assault against a peace officer is a separate crime (and felony class), Lead Op. 7, but fails to recognize this distinction in conducting the divisibility analysis.  At base, that *peace-officer* felonious assault carries a potentially different punishment in different circumstances does not mean that punishment for *ordinary* felonious assault varies based on whether a defendant is convicted under subsection (A)(1) or subsection (A)(2).  A defendant who commits felonious assault on an average citizen does not face a longer (or a shorter) sentence if the crime resulted in "serious physical harm" to the victim.  Accordingly, I do not see how the punishment factor supports divisibility.

*Mathis* also suggests that "a statute may itself identify which things must be charged (and so are elements) and which need not be (and so are means)."  *Mathis*, 136 S. Ct. at 2256.  The lead opinion contends that "[e]ach of these statutes on its face appears to be divisible" because "[e]ach appears to set forth one or more elements of the offense in the alternative, thereby defining multiple crimes."  Lead Op. 21.  The lead opinion fails to provide, however, any explanation, or cite any case, supporting the idea that the statute is divisible "on its face."  To the contrary, the statute does not explicitly identify whether the statute lists means or elements, meaning this factor does not provide a clear answer to the divisibility question.

With no definitive answer, courts are permitted to "peek at the record documents," such as an indictment and correlative jury instructions, for "the sole and limited purpose of determining whether the listed items are elements of the offense."  *Mathis*, 136 S. Ct. at 2256–57 (internal brackets and quotations omitted).  Here, Burris was specifically charged with O.R.C. § 2903.11(A)(2) and not subsection (A)(1), which admittedly could support divisibility.  But in looking at Ohio's pattern jury instructions, the divisibility analysis is once again muddied.[3]  As the government notes, Ohio's jury instructions provide alternative instructions for felonious assault under the (A)(1) and (A)(2) subsections and direct the court to select "the appropriate alternative."  Ohio Jury Instruc., Part II Crim. Instruc., 503.11(A).  Ohio courts, however, do not require a jury to unanimously choose between the two subsections when charged in a single

---

[3]The jury instructions in Burris's felonious assault case are not part of the record before this Court. Consequently, we review Ohio's jury instructions generally.

count.  *See Jackson*, 2004 WL 1045402, at *3; *Chappell*, 2002 WL 337726, at *4.  Often courts have not considered which subsection formed the basis of the juries' verdicts and instead affirmed defendants' convictions because the evidence was sufficient to convict under either subsection.  *Id.*  This treatment of the subsections as alternative means of committing the same crime is a hallmark of an indivisible statute.  *See Mathis*, 136 S. Ct. at 2249, 2256 (finding state court decision "definitively answers" the elements or means question when it holds that a jury need not unanimously decide between two methods of committing the crime).

As a final aside, I note the parties' own inconsistencies.  The government argued before the original panel that Ohio's felonious assault statute was *indivisible*.  (*See* Gov't Br. 38–39 (noting that *Anderson* treated section 2903.11(A) as indivisible and arguing that "Ohio law confirms that doing so was correct"); *id.* at 39 (arguing that "under Ohio law, subsections (A)(1) and (A)(2) of Ohio's felonious assault statute provide two different means for committing one crime"); *id.* at 41 (arguing that "even if Section 2903.11(A) were divisible (which it is not)[,]" Burris's claims would still fail).)  In its en banc brief, however, the government changed its tune: "Having conducted a more thorough review of this sentencing concept, the structure of Ohio's statute, and the other factors identified in *Mathis*, the government now agrees with Burris's original position that subsection (A)(1) and (A)(2) require proof of different elements and are divisible." (Gov't Supp. Br. 25.)**[4]**

Burris's position on divisibility has also evolved.  In his opening brief before the original panel he argued that "[b]ecause there are multiple ways to commit felonious assault, this is a divisible statute." (Pl. Br. 37.)  Then, in his supplemental brief before the en banc court, Burris stated that his "conviction does not qualify as a crime of violence whether the statute is indivisible or divisible." (Pl. Supp. Br. 23.)  The parties' inconsistent positions further demonstrate that the divisibility analysis is far from clear.

---

**[4]**One could make a strong argument that the government has forfeited, or maybe even waived, its argument that Ohio's felonious statute is divisible. *See, e.g.*, *Miller v. Texas Tech Univ. Health Sci. Ctr.*, 421 F.3d 342, 348–49 (5th Cir. 2005) ("The maxim is well established in this circuit that a party who fails to make an argument before either the district court or the original panel waives it for purposes of en banc consideration."); *Ryan v. United States*, 688 F.3d 845, 848 (7th Cir. 2012) (holding that the reason a litigant comes to its decision to not assert an argument "is irrelevant, and a mistake in reaching a decision to withhold a known defense does not make that decision less a waiver").

According to *Mathis*, employing the above tools should make answering the divisibility question "easy."  *Mathis*, 136 S. Ct. at 2256.  In a case such as this one, though, where the answer remains uncertain, "*Mathis* makes [] clear what we must do—or, more precisely, what we must *not* do:  If state law fails to provide clear answers and the record materials [don't] speak plainly, then we won't be able to satisfy *Taylor*'s demand for certainty."  *United States v. Degeare*, 884 F.3d 1241, 1246 (10th Cir. 2018) (internal quotations omitted) (citing *Mathis*, 136 S. Ct. at 2257).  In other words, we are to presume indivisibility without a clear answer.  *Stitt*, 860 F.3d at 862 (citing *Mathis*, 136 S. Ct. at 2257).  The lead opinion ignores this presumption.  In the absence of certainty, I believe it would be a fundamental error—not to mention a miscarriage of justice—to treat a defendant's prior conviction as a violent-felony predicate.  I would, therefore, hold that the statute is indivisible.

## II.

Having analyzed divisibility, I would then look to whether Burris's statute of conviction qualifies as a "crime of violence" under the elements, enumerated, or residual clauses of the Guidelines.  As mentioned, the lead opinion performs this analysis first.  For the reasons articulated, that approach makes little sense, but I agree that Ohio felonious assault criminalizes more conduct than is described in both the elements and enumerated clauses of the Guidelines.[5] I disagree, however, with the lead opinion's conclusion that Ohio felonious assault is too broad to categorically qualify under the Guidelines' residual clause.  Because the lead opinion reviews the residual clause under an inaccurate standard, it is worth elaborating on the proper analysis.

The residual clause states that crimes of violence encompass those state convictions that "otherwise involve[] conduct that presents a serious potential risk of physical injury to another."  U.S.S.G. § 4B1.2 (2015).  The government relies on this court's precedent in *United States v. Perry*, which held that Ohio's aggravated assault statute was a crime of violence under the

---

[5]In analyzing the enumerated clause, the lead opinion notes that the panel in *United States v. Rodriguez*, 664 F.3d 1032 (6th Cir. 2011), "did not refer to or analyze Ohio's statutory definition of 'serious bodily harm,' nor did it perform the divisibility analysis now required by *Descamps and Mathis*."  Lead Op. 15, n. 15.  Confusingly, the lead opinion ended its discussion there.  To the extent the panel's decision in *Rodriguez* can be read as finding that "serious physical harm" as used in Ohio's aggravated assault and felonious assault statutes requires violence, rather than note the error as the lead opinion does, I would overrule it.

residual clause of the ACCA.  703 F.3d 906, 910 (6th Cir. 2013).  The *Perry* court held, albeit with little explanation, that "[b]y its plain terms, [the Ohio aggravated assault statute] proscribes conduct that presents a serious potential risk of physical injury to another."  *Id.* at 910 (internal quotations omitted).  However, the *Perry* court failed (as did the court in *Anderson* and *Rodriguez*) to recognize that "serious physical harm" is defined in Ohio to include not only physical harm, but also mental harm.  This flaw, however, is not fatal.

When analyzing a statute under the residual clause, our inquiry differs from that of the elements and enumerated clause analyses.  The inquiry is not—as the lead opinion assumes without citation, Lead Op. 16— whether it is possible for a defendant to commit a crime in *any way* that would not be a violent felony.  *See United States v. Smith*, 881 F.3d 954, 958 (6th Cir. 2018), *cert. denied*, No. 17-8857, 2018 WL 2163626 (U.S. Oct. 1, 2018).  Rather, we ask "whether the conduct encompassed by the elements of the offense, *in the ordinary case*, presents a serious potential risk of [physical] injury to another."  *James v. United States*, 550 U.S. 192, 208 (2007), *overruled on other grounds by Johnson v. United States*, 135 S. Ct. 2551 (2015) (emphasis added).  Thus, we look at how Ohio courts *ordinarily* apply the statute in practice. *See Smith*, 881 F.3d at 958.

Of course, we are still left with the essential question:  how do we define the "ordinary" case?  The Supreme Court has articulated previously the difficulty of this analysis, albeit in the context of the ACCA:

> [T]he residual clause leaves grave uncertainty about how to estimate the risk posed by a crime.  It ties the judicial assessment of risk to a judicially imagined "ordinary case" of a crime, not to real-world facts or statutory elements.  How does one go about deciding what kind of conduct the "ordinary case" of a crime involves?  "A statistical analysis of the state reporter?  A survey?  Expert evidence?  Google?  Gut instinct?"  *United States v. Mayer*, 560 F.3d 948, 952 (C.A.9 2009) (Kozinski, C.J., dissenting from denial of rehearing en banc).  To take an example, does the ordinary instance of witness tampering involve offering a witness a bribe?  Or threatening a witness with violence?  Critically, picturing the criminal's behavior is not enough; as we have already discussed, assessing "potential risk" seemingly requires the judge to imagine how the idealized ordinary case of the crime subsequently plays out.

*Johnson*, 135 S. Ct. at 2557–58. Due to these deficiencies, the Supreme Court ultimately held that the residual clause of the ACCA violated the Constitution's guarantee of due process and overruled *James*. *Id.* at 2563. But shortly thereafter, the Supreme Court held that the residual clause of the Guidelines was still valid, due to the Guidelines' advisory nature. *Beckles v. United States*, 137 S. Ct. 886 (2017).

In light of *Beckles*, this court has held that the ordinary-case standard articulated in *James* "remains good law for purposes of the Guidelines." *Smith*, 881 F.3d at 957 (brackets omitted) (quoting *United States v. Goodson*, 700 F. App'x 417, 423 (6th Cir. 2017)); *United States v. Morris*, 885 F.3d 405, 412 (6th Cir. 2018) ("Although *Johnson* abrogated [*James*] for purposes of ACCA, the case remains good law for purposes of analyzing the residual clause of the Guidelines."). While we question the prudence of this standard (for all the reasons articulated in *Johnson*), it is the law of the land. Thus, we must determine whether Ohio felonious assault involves a "serious potential risk of physical injury" in an "idealized ordinary case of the crime." *Welch v. United States*, 136 S. Ct. 1257, 1262 (2016) (citation omitted); *see also Beckles*, 137 S. Ct. at 892.

Under *James*, "[t]he mere possibility that a person could, conceivably, commit the offense without creating a serious risk of physical injury to another is not enough to exclude the offense from the ambit of the Guidelines' residual clause." *Goodson*, 700 F. App'x at 424; *see also James*, 550 U.S. at 208 ("One can always hypothesize unusual cases in which even a prototypically violent crime might not present a genuine risk of injury[.]"). As the lead opinion discusses, however, individuals committing felonious assault in Ohio without creating a serious risk of physical injury to another, is not a mere possibility or a hypothetical. It is a certainty. Nevertheless, it appears that "ordinary" felonious assault in Ohio likely poses serious risk of physical injury, sufficient to conclude that O.R.C. § 2903.11 is a crime of violence under the residual clause of the Guidelines. I therefore disagree with the lead opinion's conclusion to the contrary.

**III.**

Everyone agrees that we review the district court's classification of Ohio felonious assault as a "crime of violence" under the Guidelines for plain error. *See* Lead Op. 10. But, because I believe Burris would not be subject to the career-offender enhancement in the absence of the residual clause—and his sentencing guideline would be significantly lower without the enhancement—the district court should be given an opportunity to consider Burris's case in light of the amendment that eliminated the residual clause just weeks after his sentencing. This court, as well as courts across the country, have previously exercised the discretion to remand under similarly unique circumstances. *See United States v. Atkinson*, 354 F. App'x 250, 254 (6th Cir. 2009) (per curiam); *see also United States v. McMillan*, 863 F.3d 1053, 1058–59 (8th Cir. 2017); *United States v. Frates*, 896 F.3d 93, 102–04 (1st Cir. 2018). I believe we should do so again.

To be clear, I would not hold that the district court erred—plainly or otherwise. *See Taylor*, 648 F.3d at 428–29. But the decision to remand does not hinge solely on a showing of plain error. *United States v. Ahrendt*, 560 F.3d 69, 80 (1st Cir. 2009) ("We d[o] not dwell on the standard of review in our decision to remand for resentencing[.]"). And a remand would serve to give the district court the opportunity to consider the amendment eliminating the residual clause—a task that was previously futile under *Anderson*. Under these circumstances, prudence dictates that the district court be given that opportunity. I respectfully dissent from the affirmance of Burris's sentence.